FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 18, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WENDELL RAY CAUDLE,

    Defendant - Appellant.

No. 21-7005
(D.C. No. 6:20-CR-00020-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

    Wendell Ray Caudle appeals an order denying his motion to suppress

incriminating evidence found as a result of a patdown search during a traffic stop.

Because the district court properly determined that the arresting officer reasonably

suspected Caudle was armed and dangerous, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.
But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R.
32.1(A).

## Background[1]

Caudle's appeal stems from a traffic stop that occurred on Christmas Eve in 2019. Around 2 a.m., while on patrol in a remote, poorly lit area, Deputy Sheriff John Jones noticed a truck whose license-plate tag was obstructed by a "toy skeleton face" attached to the truck's hitch. App. 61. As the truck pulled over, Jones also noticed that the driver's side mirror was shattered into pieces "like a spider web." *Id.* at 62. Jones approached the truck and informed the driver, later identified as Caudle, about the reason for the stop.

After requesting a driver's license and proof of insurance, Jones asked where Caudle was going. Caudle said he was on his way to visit his cousin in a nearby town, which Jones found odd given the late hour and the indirect route Caudle was taking. During this initial conversation, Caudle "appeared to be very nervous" and was "visibly shaking." *Id.* at 66. Jones told Caudle to keep his hands on the steering wheel and then returned to his patrol vehicle.

Once back at his vehicle, Jones gave Caudle's information to dispatch so they could check for outstanding warrants. Jones declined to ask dispatch to look up the status of Caudle's driver's license (a process that takes longer than a warrants check) because he could not see Caudle through the truck's tinted back window and was therefore concerned about staying in his patrol vehicle for too long. Adding to his

---

[1] We describe the facts based on the evidence presented at the suppression hearing, viewed in the light most favorable to the district court's ruling. *See United States v. Young*, 964 F.3d 938, 942 (10th Cir. 2020).

2

concern, Jones recognized Caudle's name from a case he had been working on that week—a drug investigation involving "a pretty large quantity" of methamphetamine—and knew from training and experience that "meth dealers commonly carry weapons to protect both their person and product." *Id.* at 66–67. So after checking for warrants, Jones returned to Caudle's truck "to make sure he wasn't doing anything." *Id.* at 69.

At Jones's request, Caudle stepped out of the truck. When Caudle asked why he had been pulled over, Jones again noted the shattered mirror and obstructed license-plate tag. Jones walked Caudle to the back of the truck, where Caudle removed the skeleton toy and tossed it into the truck bed. Jones then asked Caudle to place his hands on the side of the truck so Jones could check for weapons. But when Jones reached to pat Caudle's left pocket, Caudle "slapped [Jones's] hand away" and tried to move towards the driver's seat. *Id.* at 71. Concerned about Caudle becoming "very combative" and "resisting" in response to the weapons check, Jones briefly returned to his vehicle to call for backup. *Id.* at 73. When Jones returned and tried the patdown a second time, Caudle pushed Jones away and again moved towards the driver's seat.

At that point, Jones pinned Caudle up against the truck. Caudle started "kicking his feet and throwing his head back," so Jones "took [Caudle] to the ground" and tried to handcuff him. *Id.* at 74. After struggling to secure Caudle's hands, Jones threatened to use pepper spray and then did so when Caudle continued to fight back. Sometime later, while Jones and Caudle remained on the ground,

3

another officer arrived and warned Caudle that he would be tased if he did not stop

fighting. Caudle continued fighting, so the other officer tased Caudle on his lower

back. Once Jones had handcuffed Caudle, he recovered a loaded and cocked firearm

from Caudle's left pocket. During an inventory search of Caudle's truck, Jones also

found methamphetamine and drug paraphernalia.

After the government brought criminal charges against Caudle based on these

events, he moved to suppress the incriminating evidence found in his pocket and

truck, arguing (among other things) that they were fruits of an unlawful patdown

search. The district court denied the motion, rejecting Caudle's objections to a

magistrate judge's determination that Jones had reasonable suspicion to patdown

Caudle for weapons.[2]

Ultimately, Caudle pleaded guilty to possession with intent to distribute

methamphetamine and possession of a firearm in furtherance of a drug-trafficking

crime, reserving the right to appeal the order denying his suppression motion.[3] The

district court imposed a 118-month prison sentence, and Caudle appeals.

## Analysis

When, as here, a defendant challenges an order denying a motion to suppress, we

accept the district court's factual findings unless they are clearly erroneous and

---

[2] Caudle's suppression motion also disputed the validity and length of the stop,
but he did not object to the magistrate judge's findings on those issues and does not
pursue those issues on appeal.
[3] In exchange for Caudle's guilty plea, the government dismissed a separate
charge for being a felon in possession of a firearm or ammunition.

review the ultimate determination of Fourth Amendment reasonableness de novo.

*United States v. Fager*, 811 F.3d 381, 384–85 (10th Cir. 2016). Caudle's challenge

centers on his argument that the district court should have suppressed the

incriminating evidence found in his pocket and truck because Jones obtained those

items by conducting an unconstitutional patdown search. We assess that argument

below after setting out the relevant Fourth Amendment principles.

A patdown is a search and is thus subject to the Fourth Amendment's

reasonableness requirement. *United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir.

2014). To avoid a constitutional violation, an officer conducting a patdown must have

"reasonable suspicion that an individual is 'armed and dangerous.'" *Id.* (quoting *United*

*States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007)). This standard is not onerous: It

does not demand "absolute[] certain[ty] that the individual is armed," nor even probable

cause to that effect. *Id.* at 1143–44 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Instead, reasonable suspicion merely requires some "minimum level of objective

justification" for the patdown. *Id.* at 1143 (quoting *Rice*, 483 F.3d at 1083). When

assessing whether such a justification exists, we consider the totality of the

circumstances, accounting for the officer's "reasonable inferences based on training,

experience, and common sense." *Id.* (quoting *Rice*, 483 F.3d at 1083). Here, the district

court identified several circumstances contributing to Jones's reasonable suspicion that

Caudle was armed and dangerous.

One contributing factor is the time and place of the patdown. *See Fager*, 811 F.3d

at 386. Our precedents recognize that "a nighttime stop in a sparsely travelled area

. . . heighten[s] a reasonable officer's concerns for safety." *Garcia*, 751 F.3d at 1145–

46. Similar concerns arose here because, as the district court found, Jones was patrolling

alone, late at night, in a remote, poorly lit area. What's more, Jones could not see through

the truck's tinted back window, meaning he could not ensure that Caudle's hands stayed

on the steering wheel while he confirmed Caudle's information from his vehicle. *Cf.*

*United States v. Stanfield*, 109 F.3d 976, 981 (4th Cir. 1997) ("[W]e can conceive of

almost nothing more dangerous to a law[-]enforcement officer in the context of a traffic

stop than approaching an automobile whose passenger compartment is entirely hidden

from the officer's view by darkly tinted windows." (emphasis omitted)). These conditions

provide some support for Jones's decision to patdown Caudle to make sure he did not

have a weapon. *See Garcia*, 751 F.3d at 1146 (citing conditions officer faced, which

included "working alone on a sparsely travelled street and having to turn his back to [the

suspect]," as factors "support[ing] reasonable suspicion"); *United States v. Gurule*, 935

F.3d 878, 887 (10th Cir. 2019) (holding that reasonable suspicion for patdown existed in

part because search occurred at night, in dark gas-station parking lot, near "a darkened

field").

Caudle's ties to Jones's ongoing drug investigation also contribute to reasonable

suspicion. We have explained that prior encounters between a defendant and an officer

may affect reasonable suspicion. *Fager*, 811 F.3d at 386. Although the record reveals

no prior encounters between Jones and Caudle, the district court credited Jones's

testimony that Jones had recently been investigating Caudle as a suspect in a

methamphetamine-sales investigation and recognized his name from that

investigation.[4] Caudle's potential involvement in this recent activity bolstered Jones's

suspicion that Caudle was armed because Jones's training and experience taught him

that "meth dealers commonly carry weapons [for] protect[ion]." App. 66–67.

One additional factor supporting reasonable suspicion is also worth noting:

Caudle was "very nervous" and "visibly shaking" during his initial conversation with

Jones. *Id.* at 66. While nervous behavior in the presence of a police officer is usually "of

limited significance" in the reasonable-suspicion analysis, it takes on added weight when

a suspect displays "unusually severe or persistent" nervousness of the kind exhibited by

Caudle. *Garcia*, 751 F.3d at 1146 n.11 (quoting *United States v. Kitchell*, 653 F.3d 1206,

1220 (10th Cir. 2011)). And here, Jones testified that Caudle's behavior was not "a

normal type of nervousness." App. 106. Accordingly, Caudle's nervous behavior further

adds to reasonable suspicion.[5]

---

[4] Caudle tries to undercut this testimony in two ways. First, he asserts that
Jones's drug investigation was "a dead end[,] as no drugs were ever bought or
delivered." Aplt. Br. 19. But as the government points out, Jones's testimony that
Caudle had quoted a price for an ounce of methamphetamine to an informant is
sufficient to establish Caudle's *involvement* in drug activity, regardless of whether
the deal went through. *See United States v. Garcia*, 459 F.3d 1059, 1065 (10th Cir.
2006) ("[A]n individual's known *connection with* drug transactions is a factor
supporting reasonable suspicion to frisk that individual for weapons." (emphasis
added)). Second, Caudle notes that Jones failed to mention his personal involvement
with the drug investigation in his incident report. Caudle does not explain, however,
why that omission undermines Jones's testimony about his involvement or affects the
reasonable-suspicion analysis. Nor does he explain (as he must) why the district court
clearly erred in crediting Jones's testimony. *See United States v. Benard*, 680 F.3d
1206, 1209–10 (10th Cir. 2012) ("In reviewing the denial of a defendant's motion to
suppress, we . . . accept the district court's findings of fact and credibility
determinations unless clearly erroneous.").

[5] Notably, the district court only mentioned this factor when addressing
whether Jones had reasonable suspicion to prolong the traffic stop, not when

Rather than dispute these circumstances, Caudle argues that Jones's behavior was inconsistent with his stated belief that Caudle posed a threat. For example, Caudle notes that Jones walked Caudle to the back of the truck and allowed him to remove the skeleton decoration, something "[n]o reasonable officer . . . afraid for his [or her] safety" would do. Aplt. Br. 18. Were Jones "truly fearful for his safety," Caudle says, he would have frisked Caudle immediately, before allowing Caudle to walk around the vehicle. *Id.* at 19.

Caudle's view misconstrues the reasonable-suspicion standard. Recall that reasonable suspicion requires an "*objective* justification" for the patdown. *Garcia*, 751 F.3d at 1143 (emphasis added) (quoting *Rice*, 483 F.3d at 1083). As a result, our focus is on "the objective facts, not the officer's state of mind." *Fager*, 811 F.3d at 386 (quoting *United States v. Neff*, 300 F.3d 1217, 1222 (10th Cir. 2002)). This objective focus explains why we have found a patdown reasonable even when the officer conducting the search "did not himself ever indicate . . . that he in fact felt that his safety was in jeopardy." *United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996). So long as "[t]he facts available to [the officer]" would permit a reasonable officer "to believe that a frisk would be necessary [for] protect[ion]," the search is valid. *Id.* The district court properly applied this objective standard, noting the purportedly inconsistent behavior Caudle highlights but nevertheless concluding (based on the factors discussed earlier)

_____

addressing the validity of the patdown. We may nevertheless consider Caudle's nervousness as it relates to the patdown issue. *See United States v. Nelson*, 868 F.3d 885, 891 (10th Cir. 2017) (noting our "discretion to affirm on alternative grounds 'when the record below is sufficient to permit us to conclude, as a matter of law, that [d]efendant's Fourth Amendment rights were not violated'" (alteration in original) (quoting *United States v. Mosley*, 743 F.3d 1317, 1324 n.2 (10th Cir. 2014))).

that Jones could have reasonably believed Caudle had a weapon. And again, Caudle does

not challenge those factors or the factual findings supporting them. For these reasons, we

reject Caudle's argument about Jones's subjective views.

## Conclusion

Considering the totality of the circumstances—namely, the time and place of the

patdown, Caudle's ties to an ongoing drug investigation, and Caudle's extreme

nervousness—Jones had objective reasons to believe Caudle was armed and dangerous.

Jones therefore had reasonable suspicion to pat Caudle down for weapons, and the district

court properly denied Caudle's suppression motion. We affirm.


Entered for the Court


Nancy L. Moritz
Circuit Judge